

FILED & ENTERED

FEB 11 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae        DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:11-bk-30025-RK |
| CHANG SUP HAN, | Chapter 7 |
| Debtor. | Adv. No. 2:11-ap-02632-RK |
| ALMA L. CASTRO; ANGELINA MARQUEZ JUAREZ, aka ANGELINA JUAREZ; and ROSA MARIA CAMACHO FERNANDEZ, aka ROCIO FERNANDEZ, | MEMORANDUM DECISION ON COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBT |
| Plaintiffs, | DATE:     September 13, 2012<br>TIME:     9:00 a.m.<br>CTRM:    1675 |
| vs. | |
| CHANG SUP HAN, individually and dba GOLD MAINTENANCE, INC., | |
| Defendants. | |

This adversary proceeding was tried before the undersigned United States

Bankruptcy Judge on September 13, 2012, on the complaint of plaintiffs Alma L. Castro

("Castro"), Angelina Marquez Flores, aka Angelina Juarez ("Juarez") and Rosa Maria

Camacho Fernandez, aka Rocio Fernandez ("Fernandez") (also collectively referred to as

"Plaintiffs") to determine dischargeability of debt against defendant Chang Sup Han

1    ("Han") pursuant to Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy

2    Code, 11 U.S.C.   Jordan D. Mazur, of the law firm of Weinberg, Roger & Rosenfeld,

3    appeared for Plaintiffs.  Chris R. Morton, of the law firm of C. Morton & Associates,

4    appeared for Han.

5        On May 7, 2011, Han filed a voluntary petition for relief under Chapter 7 of the

6    Bankruptcy Code, 11 U.S.C.  On August 15, 2011, plaintiffs commenced this adversary

7    proceeding by filing their complaint against Han seeking a declaration that the debts

8    based on judgments they obtained against him for violations of the California Labor Code

9    ("Labor Code") be deemed non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A),

10   523(a)(4) and 523(a)(6).  On September 19, 2011, defendant Han served and filed an

11   answer denying the substantive allegations of the complaint.

12       On September 13, 2012, the court conducted the trial in this adversary

13   proceeding.  At the close of the evidence at trial, the court ordered the parties to file post-

14   trial briefs, which have now been filed.  After plaintiffs filed their reply post-trial brief on

15   January 10, 2013, the court took the matter under submission.

16       Having considered the evidence admitted at trial and the oral and written

17   arguments of the parties, the court now vacates the further hearing on February 11, 2013

18   and issues this memorandum decision setting forth the following findings of fact and

19   conclusions of law based on facts determined on the evidence admitted at trial.

20       The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§

21   157(a) and (b)(1) and (2)(I) and 1334.  Venue is proper in this judicial district.  This

22   adversary proceeding is a core matter.

23                              <u>FACTS</u>

24       Han was the owner of Gold Maintenance, Inc. ("Gold Maintenance"), a janitorial

25   services company which he started approximately eight or nine years ago.  *Transcript of*

26   *Deposition of Chang Sup Han ("Han Deposition"),* January 20, 2012, Exhibit 9 at 10:4-9.

27   Gold Maintenance employed Castro from April 16, 2007 to October 10, 2008, Juarez

28   from September 13, 2006 to May 4, 2008; and Fernandez from December 23, 2007 to

1  May 4, 2008.  *Amended Trial Declaration of Alma Castro ("Castro Amended Trial*

2  *Declaration"),* Exhibit 27 at 2:1-3, Exhibit 28 (Spanish language original of declaration)

3  and Exhibit 29 (Translator's Declaration).; *Amended Trial Declaration of Angelina*

4  *Marquez Juarez ("Juarez Amended Trial Declaration"),* Exhibit 40 at 2:1-3, Exhibit 41

5  (Spanish language original of declaration) and Exhibit 42 (Translator's Declaration);

6  *Amended Trial Declaration of Rosa Fernandez ("Fernandez Amended Trial Declaration"),*

7  Exhibit 53 at 2:4-6, Exhibit 54 (Spanish language original of declaration) and Exhibit 55

8  (Translator's Declaration).  Han promised plaintiffs that they would be paid "minimum

9  wage," but in fact paid them less than was required by applicable wage and hour

10  regulations of the California Labor Code.  *Castro Amended Trial Declaration,* Exhibit 27

11  at 3:4-28; *Juarez Amended Trial Declaration,* Exhibit 40 at 3:7-4:6; *Fernandez Amended*

12  *Trial Declaration"),* Exhibit 53 at 2:25-3:21

13      As the owner of Gold Maintenance, Han exercised control over the company's

14  day-to-day operations, supplied the company's equipment, uniforms, and cleaning

15  supplies, transported plaintiffs from jobsite to jobsite, had full control over plaintiffs'

16  wages, hours, and working conditions, and was directly responsible for the underpayment

17  of wages claimed by plaintiffs.  *Castro Amended Trial Declaration,* Exhibit 27 at 2:1-5:8;

18  *Juarez Amended Trial Declaration,* Exhibit 40 at 2:1-5:20; *Fernandez Amended Trial*

19  *Declaration"),* Exhibit 53 at 2:1-4:23.  As plaintiffs' supervisor, Han typically required

20  plaintiffs to work 13 to 14 hours per night, five to seven days per week.  *Id.*  Plaintiffs

21  serviced approximately 10 worksites per night.  *Id.*  Servicing the worksites took between

22  30 minutes and 1½ hours each.  *Id.*  Han drove plaintiffs in his personal vehicle between

23  worksites for trips ranging from around 15 minutes to up to an hour.  *Id.*  Han was always

24  present at all jobsites and supervised the work crew very closely.  *Id.*

25      Plaintiffs testified at trial that Han promised to pay them "minimum wage," but they

26  were never compensated correctly based on the applicable minimum wage rates.  *Id.*

27  Han never paid Plaintiffs for overtime and double time hours of work.  *Id.*  Nor were

28  plaintiffs ever paid for their travel time during work hours.  *Id.*

Plaintiffs testified that Han never kept any time records and did not provide any wage deduction statements. *Id.* In deposition and trial testimony, Han has made contradictory statements about keeping time records for plaintiffs. In his deposition on January 20, 2012, Han testified that he discarded plaintiffs' time records after submitting their wage payments to them. *Han Deposition,* Exhibit 9 at 21:25-22:3, 48:6-17; *see also, Trial Testimony of Chang Sup Han ("Han Trial Testimony"),* September 13, 2012 at 9:48-9:50 a.m., 10:17-10:19 a.m. However, at trial, Han testified that he maintained all time records, but no longer had such records because they were delivered to the California Employment Development Department ("EDD") during the EDD's investigation of Plaintiffs' claims. *Trial Declaration of Chang Sup Han ("Han Trial Declaration"),* filed on August 30, 2012, at 2:5-12; *Han Trial Testimony,* September 13, 2012 at 9:41-9:43 a.m. (However, there may have been some confusion between time records or payment records relating to the wages paid by Han to plaintiffs. *See Han Trial Testimony,* September 13, 2012 at 10:17-10:19 a.m.); *Han Deposition* at 25:16-26:5. Plaintiffs kept their own time records for their work on a daily basis, and all of them kept all of their paycheck stubs. *Castro Amended Trial Declaration,* Exhibit 27 at 3:13-15, 4:1, 5:1-6 and Exhibit B attached thereto; *Juarez Amended Trial Declaration,* Exhibit 40 at 3:16-18, 4:7, 4:9-10 and Exhibits C and D attached thereto; *Fernandez Amended Trial Declaration,* Exhibit 53 at 3:6-8, 3:22-24 and Exhibits A and B.

Plaintiffs testified at trial that they never received meal or rest breaks from Han as required by the Labor Code and that their workload was always unreasonably high as the work crew had to finish about 10 buildings per night. *Castro Amended Trial Declaration,* Exhibit 27 at 2:19-20; *Juarez Amended Trial Declaration,* Exhibit 40 at 2:19-20; *Fernandez Amended Trial Declaration,* Exhibit 53 at 2:17-18, 3:11-21. Plaintiffs further testified that Han was always at the jobsites and constantly pressured them to work faster as they only had a limited amount of time to finish cleaning each building. *Castro Amended Trial Declaration,* Exhibit 27 at 2:9-10; *Juarez Amended Trial Declaration,* Exhibit 40 at 2:9-10; *Fernandez Amended Trial Declaration,* Exhibit 53 at 2:8-9. Plaintiffs

1   testified that they had to take their meals while being transported by Han from one

2   location to another and often did not get to finish their meals. *Castro Amended Trial*

3   *Declaration,* Exhibit 27 at 3:19-23; *Juarez Amended Trial Declaration,* Exhibit 40 at 3:24-

4   28; *Fernandez Amended Trial Declaration,* Exhibit 53 at 3:14-17.  While in the car, Han

5   would tell everyone to take a nap, and that he did not want them to talk or be on personal

6   calls. *Castro Amended Trial Declaration,* Exhibit 27 at 2:24-27; *Juarez Amended Trial*

7   *Declaration,* Exhibit 40 at 3:2-6; *Fernandez Amended Trial Declaration,* Exhibit 53 at

8   3:18-21.

9        In 2008, plaintiffs filed separate administrative law claims with the Labor

10   Commissioner of the State of California ("Labor Commissioner"), alleging Han owed them

11   (1) unpaid wages for regular time, overtime and double time work, (2) unpaid wages for

12   meal and rest periods, (3) interest on such wages pursuant to Labor Code, § 98.1, and

13   (4) waiting time penalties pursuant to Labor Code, § 203.  *Order, Decision or Award of*

14   *the Labor Commissioner re: Alma L. Castro v. Gold Maintenance, Inc., et al. ("Castro*

15   *Decision"), and Judgment thereon,* Exhibits 3 and 4; *Order, Decision or Award of the*

16   *Labor Commissioner re: Angelina Juarez v. Gold Maintenance, Inc., et al. ("Juarez*

17   *Decision"), and Judgment thereon,* Exhibits 5 and 6; *Order, Decision or Award of the*

18   *Labor Commissioner re: Rocio Fernandez v. Gold Maintenance, Inc., et al. ("Fernandez*

19   *Decision"), and Judgment thereon,* Exhibits 7 and 8.   On January 29, 2010, the Labor

20   Commissioner entered separate decisions for each plaintiff on these claims. *Id.*  The

21   decisions contain similar findings of fact, although the amounts awarded differed between

22   plaintiffs. *Id.*  The decisions were confirmed by judgments entered by the Superior Court

23   of California for the County of Los Angeles. *Id.*

24        The Labor Commissioner found that plaintiffs were employees of Gold

25   Maintenance, and not independent contractors as argued by Han. *Id.*  The Labor

26   Commissioner further found that Han was individually liable for plaintiffs' wage claims

27   because he was directly responsible for the underpayment of their wages. *Id.*  The Labor

28   Commissioner further found that plaintiffs sufficiently established their hours worked by

5

their personal time records and Han's failure to provide time records, and that they were

entitled to overtime and double time pay pursuant to Labor Code, § 510.  *Id.*  The Labor

Commissioner further found that plaintiffs were not provided their duty-free meal periods

or 10-minute rest periods for every four hours worked.  *Id.*  Finally, the Labor

Commissioner held that plaintiffs were entitled to interest on their unpaid wages, pursuant

to Labor Code, § 98.1, and were entitled to penalties pursuant to Labor Code, § 203

because Han should have known of the duty to pay the wages and volitionally failed to do

so.  *Id.*

       Based on these findings, the Labor Commissioner awarded Castro a total of

$34,323.62, which included $21,871.85 in earned and unpaid regular time, overtime and

double time wages, $2,547.50 in earned and unpaid meal period premium wages,

$2,547.50 in earned and unpaid rest period premium wages, $3,516.77 in interest

pursuant to Labor Code, § 98.1; and $3,840.00 in penalties pursuant to Labor Code, §

203.  *Castro Decision,* Exhibit 4.  The Labor Commissioner awarded Juarez a total of

$48,253.76, which included $30,000.02 in earned and unpaid regular time, overtime and

double time wages, $3,916.00 in earned and unpaid meal period premium wages,

$3,916.00 in earned and unpaid rest period premium wages, $6,581.74 in interest

pursuant to Labor Code, § 98.1 and $3,840.00 in penalties pursuant to Labor Code, §

203.  *Juarez Decision,* Exhibit 6.  The Labor Commissioner awarded Fernandez a total of

$12,844.21, which included $6,282.87 in earned and unpaid regular time, overtime and

double time wages, $693.50 in earned and unpaid meal period premium wages; $693.50

in earned and unpaid rest period premium wages; $1,334.34 in interest pursuant to Labor

Code, § 98.1, and $3,840.00 in penalties pursuant to Labor Code, § 203.  *Fernandez

Decision,* Exhibit 8.   To date, Han has not made any payments on these awards.  *Castro

Amended Trial Declaration,* Exhibit 27 at 5:7-8; *Juarez Amended Trial Declaration,*

Exhibit 40 at 5:19-20; *Fernandez Amended Trial Declaration"),* Exhibit 53 at 4:22-23.

       //

       //

ANALYSIS

I.    *Plaintiffs Have Not Proven that Han's Debts to Them Should Be Excepted from Discharge on Grounds that He Made the Representations that He Would Pay Them Minimum Wage with Knowing Falsehood and with Intent to Deceive* (11 U.S.C. § 523(a)(2)(A)).

11 U.S.C. 523(a) provides that "[a] discharge under section 727, 1141, 1228(a), 1228 (b) or 1328(b) of this title does not discharge an individual debtor from any debt— . . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."   11 U.S.C. § 523(a)(2)(A); *see also, Ghomeshi v. Sabban (In re Sabban),* 600 F.3d 1219, 1222 (9th Cir. 2010); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1086 (9th Cir. 1996). [1]  To render a debt nondischargeable under § 523(a)(2)(A), the following must be shown by a preponderance of the evidence:  (1) that the debtor made the representations at issue; (2) that at the time the debtor knew they were false; (3) that the debtor made those representations with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained the alleged losses as the proximate result of the representations having been made.  *In re Sabban,* 600 F.3d at 1222 (citations omitted); *In re Eashai*, 87 F.3d at 1086; *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *see also, 4 March, Ahart and Shapiro, California Practice Guide: Bankruptcy,* ¶ 22:452 at 22-56 (2011). Plaintiffs must prove each of these elements of a claim under § 523(a)(2)(A) by a preponderance of the evidence.  *In re Eashai*, 87 F.3d at 1086; *see also, Grogan v. Garner*, 498 U.S. 279, 291 (1991).

In the complaint, plaintiffs allege:

---

[1]   Plaintiffs assert claims under 11 U.S.C. § 523(a)(2)(A), not § 523(a)(2)(B) concerning false financial statements in writing.  *Plaintiffs' Trial Brief,* filed on September 6, 2012 at 4 n. 2.

61. The debts owed to the Plaintiffs are not dischargeable because they constitute money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition in violation of 11 U.S.C. § 523(a)(2). To wit, Defendant promised to pay minimum wage while not intending to do so; he portrayed himself and his company as a lawful employer while he knew and should have known that he regularly violated California laws including those requiring minimum wages, overtime and travel time pay, maintaining accurate time records, provision of wage statements required by statute, and provision of meal periods and rest periods required by law. Plaintiffs relied to their detriment on Defendant's promises to pay minimum wages and his portrayal of his operation as lawful. As Defendant's debts to each of the Plaintiffs arises from his fraudulent conduct and false pretenses, they are nondischargeable under Section 523(a)(2).

Complaint at 13, ¶61.

§ 523(a)(2)(A) – First Element: Han Made Representations to Plaintiffs: Under 11 U.S.C. § 523(a)(2)(A), plaintiffs must prove that Han made the representations at issue. *In re Eashai*, 87 F.3d at 1086. Plaintiffs testified at trial that the representations made by Han to them were that he would pay Plaintiffs "minimum wage." *Castro Amended Trial Declaration,* Exhibit 27 at 3:4-5 ("20. Han told me I would be paid minimum wage, but I was always paid at a rate below $7.50 an hour in 2007."); *Juarez Amended Trial Declaration,* Exhibit 40 at 3:7-8 ("20. Han told me I would be paid minimum wage, but I was always paid at a rate below $6.75 an hour in 2007."); *Fernandez Amended Trial Declaration"),* Exhibit 53 at 2:25-26 ("15. Han told me I would be paid minimum wage, but I was always paid at a rate below $7.50 an hour in 2007."). Han argues in his post-trial brief that he may not have made any such representations. *Defendant's Post Trial Brief,* filed on December 10, 2012, at 2 ("Actually from the evidence it is not clear the defendant made any representations."). While plaintiffs' trial testimony that Han told them they would be paid "minimum wage" seems vague and somewhat conclusory, the court finds such testimony to be credible. Otherwise, plaintiffs would not have worked for Han unless they were paid at least "minimum wage." Han's testimony that he understood

8

that he was paying plaintiffs "minimum wage" corroborates plaintiffs' testimony that he made the representation he would pay them "minimum wage."

Accordingly, the court finds that plaintiffs have shown by a preponderance of the evidence that Han represented that he would pay them wages at the legal minimum wage rate.  Thus, plaintiffs have proven by a preponderance of the evidence the first element of § 523(a)(2)(A) that Han made these representations.

§ 523(a)(2)(A) – Second Element:  Han Did Not Know at the Time the Representations Were False:  Second, under § 523(a)(2)(A), plaintiffs must prove that at the time Han made the representations at issue, he knew they were false.  *In re Eashai*, 87 F.3d at 1086.   For a debt for money or property obtained through "false pretenses or representations" to be nondischargeable under § 523(a)(2)(A), plaintiff must show by a preponderance of the evidence that "the maker of a statement chooses to assert it as a fact even though he is conscious that he has neither knowledge nor belief in its truth 'and recognizes that there is a chance, more or less great, that the fact may not be as it is represented.'"  *Advanta National Bank v. Kong (In re Kong),* 239 B.R. 815, 826-827 (9th Cir. BAP 1999), *citing, Restatement (Second) of Torts, § 526, comment e.*  "This is often expressed by saying that fraud is proved if it is shown that a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false."  *Id.* at 827.  As such, a debt that is obtained by a debtor who does not have an honest belief as to his intent to pay it is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).  *Id.* at 828.

As indicated above, Han made the representations to plaintiffs that he would pay them "minimum wage."  The nature and scope of these representations of payment at "mimimum,wage" present issues of Han's knowledge and intent and must be considered.  As indicated by Han's trial testimony and discovery responses, Han thought he paid plaintiffs their appropriate wages at the prevailing minimum wage rates during their employment with Gold Maintenance.  *Han Trial Declaration* at 2:7-8 ("I understood I was to pay $8 per hour and did so.");  *Han Deposition,* Exhibit 9 at 22:20-21 ("I basically paid

minimum wage.  For example, $8 per hour for average workers, but for workers who
brought their own cars, I paid more for them.").  By this testimony, Han apparently meant
that all he had to do was pay the rate of $8 per hour for work, and he seems to argue that
the nature and scope of his representations of paying "minimum wage" is somewhat
limited.

However, plaintiffs construe Han's representations that he would pay "minimum
wage" as something broader than a wage rate of $8 per hour.  It is evident that plaintiffs
construe Han's representations that he would pay "minimum wage" more broadly to
subsume the requirements under the Labor Code that he pay them for travel time and
other time under his supervision and for meal and rest periods that he denied them.  *See,
e.g., Plaintiffs' Post-Trial Brief,* filed on October 18, 2012, at 17.  The Labor
Commissioner rejected Han's interpretation of what he considered was "minimum wage"
and sustained plaintiffs' administrative claims that Han failed to correctly pay plaintiffs
their proper pay for regular time, overtime and double time at the legal minimum wage
rates and for meal and rest periods pursuant to the requirements of the California Labor
Code.  *Castro Decision,* Exhibit 4; *Juarez Decision,* Exhibit 6; *Fernandez Decision,*
Exhibit 8.

Han argues that his failure to pay proper wages to plaintiffs was caused by his
unfamiliarity with the requirements of law.  *Defendant's Trial Brief,* filed on September 12,
2012, at 2:4-13, 4:9-11.  That is, Han argues that he did not know he was obligated to
pay wages for travel time or overtime when he treated travel time as break time and only
treating time worked on the job site as compensable time.  *Id.* at 2:4-13; *Han Trial
Testimony,* September 13, 2012 at 9:50-9:54 a.m.; *Han Deposition,* Exhibit 9 at 22:24-
24:10, 31:6-10.  In his discovery responses, Han stated that he "did not understand the
definition of hours worked," "did not understand that I was required to compensate travel
time so I acted out of negligence," "did not understand I was required to calculate travel
time and other items as work time so I acted out of negligence."  *Responses by
Defendant to Requests for Admissions Propounded by Plaintiff, Set No. 1, Request for*

*Admissions Nos. 8, 10 and 11 and Responses thereto,* Exhibit 12 at 3; Exhibit 15 at 2:25-27, 3:1-4; *Han Deposition,* Exhibit 9 at 39:11-14.  Plaintiffs have not shown that Han knew or understood the requirements of the Labor Code regarding meal or rest breaks, premium rates for overtime and double time work and travel time as indicated by his deposition testimony that plaintiffs never discussed these issues with him.  *Han Deposition,* Exhibit 9  at 55:3-19.  Plaintiffs have not offered evidence that Han was on notice of the requirements of the Labor Code regarding minimum wage, regular, overtime and double time pay, treatment of travel time, and meal and rest breaks.  There is nothing in the trial testimony of plaintiffs that contradicts Han's testimony that they did not discuss these matters with him and did not otherwise bring these matters to his attention.

Han's testimony that he did not know or understand the requirements of the law regarding wage and hour regulations was credible.  First, Han is not a native English speaker and had problems communicating in English and with the workers whose main language was Spanish, and second, Han lacked business experience.  *Han Trial Declaration* at 1:23-28 ("I do not speak English very well at all.  I know some words, but I do not speak in long sentences.  The workers at Gold Maintenance I understand their main language was Spanish.  So we did not have a common language.  That made communication difficult.  And it didn't help that I had never had a business like this before.");  *Han Trial Testimony,* September 13, 2012 at 9:55-9:56 a.m.   The court notes that Han testified at trial assisted by a Korean language interpreter, and plaintiffs testified at trial assisted by a Spanish language interpreter.  *Han Trial Testimony,* September 13, 2012, at 9:37-10:42 a.m., 10:50-10:51 a.m.: *Castro Trial Testimony,* September 13, 2012, at 9:16-9:21 a.m.; *Juarez Trial Testimony,* September 13, 2012, at 9:24-9:27 a.m., 10:45-10:47 a.m.;  *Fernandez Trial Testimony,* September 13, 2012, at 9:28-9:32 a.m.  Han testified in his deposition that he is an immigrant and came to live in this country approximately 20 years ago.  *Han Deposition,* Exhibit 9 at 11:17-22.  Han said he worked for others as a cleaner for 10 years before starting his own maintenance company.  *Id.* at 9-11.  Han ran the business of Gold Maintenance from his house, worked along side of

the employees, cleaning, and drove employees in his personal car. *Han Deposition,*
Exhibit 9 at 18:9-16, 18:25-19:25, 20:1-4. From the business, Han paid himself
approximately $3,000 per month for working for the business. *Han Deposition,* Exhibit 9
at 20:5-21:4, 53:6-14.

Moreover, Han treated his employees, including plaintiffs, as independent
contractors and paid them as such, even though treating them as independent
contractors rather than employees was legally erroneous and he was required to pay
them for overtime and double-time work and to give them meal and rest breaks as
required by the Labor Code. *Han Trial Declaration* at 2:1-26; *Han Deposition,* Exhibit 9 at
13:7-15:15; *see also, Castro Decision,* Exhibit 4; *Juarez Decision,* Exhibit 6; *Fernandez
Decision,* Exhibit 8. As Han argues, he treated plaintiffs as independent contractors and
paid them without taking employee deductions out of their pay, and they did not complain
or otherwise tell him that this was erroneous during their employment with him.
*Defendant's Post-Trial Brief* at 3, 5; *Han Trial Declaration* at 2:1-12.

The court finds that Han's testimony that he did not understand the requirements
of the Labor Code to be credible and shows that he did not have intent to deceive or
defraud plaintiffs. While Han's lack of knowledge or understanding the law does not
excuse his violations of the Labor Code as determined by the Labor Commissioner, it
does have bearing on his intent as to whether or not his debts owed to plaintiffs for such
violations are excepted from discharge under § 523(a)(2)(A).

Plaintiffs argue that "even if Han were deemed credible on this point [that he did
not knowingly make false representations], the law still holds him responsible because he
had at least a reckless disregard for the truth in representing to the employees that they
were being treated fairly under the law and fully compensated for their work." *Plaintiffs'
Reply Post-Trial Brief* at 2:9-12. Plaintiffs further argue:

> "In this case, the risk of violating basic wage and hour laws was either known or
> should have been known when Han controlled the workers for 13-14 hours per day
> 6-7 days per week and failed to pay for all of those hours or pay for even a single
> hour of overtime. . . . In this case, at best, Han undertook no inquiry to determine

1
2
3

whether the law had been violated.  Not only can basic laws be readily found on the websites of several state agencies, employers have affirmative obligations with those laws and to post for employees' viewing in an accessible place a list of the fundamental laws and workers' rights in California.

4  *Id.* at 2:20-3:3.  "[E]ither actual knowledge of the falsity of a statement, or reckless

5  disregard for its truth, satisfies the scienter requirement for nondischargeability of a debt."

6  *In re Grabau,* 151 B.R. 227, 234 (Bankr. N.D. Cal. 1993), *quoting, In re Houtman,* 568

7  F.2d 651, 656 (9th Cir. 1978)(construing predecessor statute under the former Bankruptcy

8  Act).  Plaintiffs do not refer to the evidentiary record in making the factual assertions in

9  this argument that Han acted with reckless disregard, and the court is not aware of

10  evidence in the record to support such factual assertions.  There is nothing in the

11  evidentiary record regarding whether Han undertook any inquiry to determine whether his

12  employment practices violated the law, that basic laws can be readily found on state

13  agency websites or that employers have affirmative obligations with such laws, such as

14  posting a list of those laws and workers' rights in California.  Plaintiffs and their counsel

15  apparently consider these assertions to be self-evident because they offered no evidence

16  to support such assertions, nor did they solicit testimony of Han or other witnesses, to

17  support such assertions.  Neither was the court requested to take judicial notice of such

18  matters.  *See* Fed. R. Evid. 201.  "[R]eckless disregard must involve more than simple,

19  even inexcusable negligence; it requires such extreme departure from the standards of

20  ordinary care that it presents a danger of misleading [those whom rely on the truth of the

21  representation]."  *In re Kong,* 239 B.R. at 826, *quoting,* 69A Am Jur.2d*, Securities*

22  *Regulation—Federal* § 1284 (1993).

23       The court finds that Han had mistaken and inexcusable beliefs for purposes of the

24  the Labor Code, but honest beliefs for purposes of the Bankruptcy Code, that he was

25  paying plaintiffs their correct wages by treating travel time and time which the workers

26  were not actually performing cleaning as noncompensable time and not as overtime to

27  the extent such time, plus their working time, exceeded regular time of eight hours per

28  day.  Han represented that he would pay plaintiffs "minimum wage," and thought he had

done so by paying them at a rate of $8 per hour.  Han incorrectly thought that he only needed to pay them for the time actually cleaning at the job sites and that he could treat travel time between job sites as meal or break periods, and thus, he had a narrow understanding of his representations to plaintiffs that he would pay them "minimum wage."  Therefore, the court concludes that in making the representations that he would pay "minimum wage," Han made such representations based on his mistaken, but incorrect, beliefs regarding the requirements of law to pay correct wages, and plaintiffs have not shown by a preponderance of the evidence that Han knew the falsity of his representations that he would pay them "minimum wage" or acted in reckless disregard of the truth.  These circumstances at most demonstrate negligence.

After considering the evidence admitted at trial, the court finds that plaintiffs have not shown by a preponderance of the evidence that Han knew or understood the requirements of the Labor Code to properly pay plaintiffs for their regular time, overtime and double-time work and to provide them with proper meal and rest breaks.  Therefore, the court finds that Han did not actually know and did not act in reckless disregard of the truth that his representations that he would pay plaintiffs "minimum wage" were false at the time they were made.   Accordingly, the court concludes that plaintiffs have not met their burden of proof of showing by a preponderance of the evidence that Han knew that he falsely represented to plaintiffs that he would pay them "minimum wage."

§ 523(a)(2)(A) – Third Element:  Han Did Not Make the Representations with Intent to Deceive:  Third, under § 523(a)(2)(A), plaintiffs must prove that Han made the representations with the intention and purpose of deceiving them as creditors.  *In re Eashai,* 87 F.3d at 1086.  The third element of § 523(a)(2)(A)--the intent to deceive—is a question of fact.  *Rubin v. West (In re Rubin),* 875 F.2d 755, 758 (9th Cir. 1989).  Since a debtor will rarely admit to his fraudulent intentions, the creditors must rely on circumstantial evidence to infer an intention to deceive.  *In re Eashai,* 87 F.3d at 1090.  The court may infer an intent to deceive from a false representation.  *In re Rubin,* 875 F.2d at 759 (citation omitted).

1    Plaintiffs argue that "Han had the intention and purpose of deceiving the Plaintiffs

2  when he made representations." *Plaintiffs' Post-Trial Brief,* filed on October 18, 2012, at

3  18. Specifically, they argue:

> 4    Defendant has suggested that his behavior could not have been fraudulent
> 5    because he was not aware of the law on overtime and breaks. It is of course well-
>      settled that ignorance of the law is no defense. See *Heritage Residential Care,*
> 6    *Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4[th] 75
>      ["ignorance of a law is not a defense to a charge of its violation"]. His intent to
> 7    deceive may be inferred from proof of the surrounding circumstances." *In re*
>      *Wendt,* 381 B.R. 217, 223 (Bankr. S.D. Tex. 2007); see also *In re Masegian,* 134
> 8    B.R. 402, 406 (Bankr. E.D. Cal. 1991)(inferring intent to deceive under §
>      523(a)(2)(B)). Because Han could have anticipated that parties would rely on
> 9    false information in deciding terms of employment, the resulting debt is not
> 10   dischargeable under § 523(a)(2). See *Tustin Thrift & Loan Assoc. v. Maldonado*
>      *(In re Maldonado),* 228 B.R. 735, 738-739 (B.A.P. 9th Cir. 1999), (citing
> 11   Restatement (Second) of Torts § 533, Comment g.)

12  *Plaintiffs' Post-Trial Brief* at 18.

13    Since the court finds that Han did not know of falsity of his representations to

14  plaintiffs that he would pay "minimum wage" at the time they were made, the court finds

15  that Han did not make the representations with the intention and purpose of deceiving

16  plaintiffs. While ignorance of the law may not be a defense to Han's liability for violations

17  of the Labor Code for failure to pay proper wages to plaintiffs, it may be considered

18  regarding whether he had the subjective intent to deceive plaintiffs. *See Walter v. Betts*

19  *(In re Betts),* 174 B.R. 636, 648-649 (Bankr. N.D. Ga. 1994) (summary judgment denied

20  where factual findings were not made in prior administrative proceedings regarding

21  debtor's subjective intent and debtor's evidence of ignorance of the law may support

22  inference of lack of malice or willfulness under 11 U.S.C. § 523(a)(6)). Accordingly, the

23  court finds that plaintiffs have not satisfied the third element of § 523(a)(2)(A).

24    § 523(a)(2)(A) – Fourth Element:  Plaintiffs Did Not Justifiably Rely on Han's

25  Representations:  Fourth, under § 523(a)(2)(A), plaintiffs must prove that they justifiably

26  relied on Han's representations. *In re Eashai,* 87 F.3d at 1086. In regards to the fourth

27  element of § 523(a)(2)(A), plaintiffs must show that their reliance on Han's promise to pay

28  "minimum wage" was "justified." *Field v. Mans,* 516 U.S. 59, 73-76 (1995) (holding that

reliance need not reach a level of "reasonableness" to establish nondischargeability under § 523(a)(2)(A), but must still be justifiable).   There cannot be justifiable reliance upon a representation if the plaintiffs knew it is false or its falsity is obvious.  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 22:481 at 22-59 (2011), *citing In re Kirsh,* 973 F.2d 1454, 1459 (9th Cir. 1992)("[A] person cannot purport to rely upon preposterous representations or close his eyes to avoid discovery of the truth.").

Based on their trial testimony, the court finds that plaintiffs have not met their burden of proving beyond a preponderance of the evidence that they justifiably relied upon Han's representations to pay them "minimum wage."  While plaintiffs agreed to work for Han for "minimum wage," the court finds that there was no justifiable reliance because they knew of the substandard work conditions and worked for Han despite these conditions and Han's routine underpayment as indicated by the statements of Castro and Juarez in their trial declarations.  *Castro Amended Trial Declaration*, Exhibit 27 at 4:3-4 ("I continued working for Han despite the work conditions because I was a single mother of five children ranging in ages 2 – 16 years old.); *Juarez Amended Trial Declaration,* Exhibit 40 at 11-19 ("In 2007, I called Maintenance Cooperation Trust (MCTF) because I had worked for three months without a day of rest and a friend told me if I was working that much I should be making more money.  When I spoke with MCTF I was told that I should file a claim with the Labor Commissioner.  I did not immediately file a claim with the Labor Commissioner because I was afraid to lose my job.  I could not lose my job because I was the only one in my household with an income, my husband is sick and my daughter is disabled.").  Fernandez in her trial declaration did not make any express statement that she knew about the substandard work conditions and worked anyway, but the court infers that she knew about them and worked anyway as she detailed the substandard conditions in her trial declaration and filed a claim with the Labor Commissioner several months after she left Han's employment, and most likely, discussed the work conditions with her co-workers, including Castro and Juarez, who

1  worked at the same time period as part of work crews driven by Han.  *Fernandez*

2  *Amended Trial Declaration,* Exhibit 53 at 2-4.

3        Accordingly, the court finds that plaintiffs have not shown by a preponderance of

4  the evidence that they justifiably relied upon Han's representations that he would pay

5  them "minimum wage".  Accordingly, the court finds that plaintiffs have not satisfied the

6  fourth element of § 523(a)(2)(A).

7        §523(a)(2)(A) – Fifth Element:  Losses Did Not Proximately Result from the

8  Representations Made by Han to Plaintiffs:  Fifth, under § 523(a)(2)(A), Plaintiffs must

9  prove that they sustained the alleged losses as the proximate result of the Han's

10  representations.  *In re Eashai*, 87 F.3d at 1086.   Since the court finds that plaintiffs have

11  not proven that they justifiably relied upon Han's representations that he would pay them

12  "minimum wage," the court also finds that they have also failed to proved that Han's

13  representations proximately caused their injuries.  Accordingly, the court finds that

14  plaintiffs have not proven by a preponderance of the evidence that they sustained losses

15  as a proximate result of the representations made by Han that he would pay plaintiffs

16  "minimum wage."

17        Plaintiffs argue that the Labor Commissioner's orders, decisions or awards in their

18  favor are entitled to preclusive effect and collaterally estop Han in this case.  *Plaintiffs'*

19  *Trial Brief* at 4, *citing inter alia, Muegler v. Bening,* 413 F.3d 980 (9th Cir. 2005); *Plaintiffs'*

20  *Post-Trial Brief,* filed on December 31, 2012, at 12-21.  In *Muegler,* the Ninth Circuit

21  upheld the application of collateral estoppel based on a state court judgment in a §

22  523(a)(2)(A) action because the elements of the state court claim and the § 523(a)(2)(A)

23  claim were the same under the circumstances of that case.  413 F.3d at 982.  In the case

24  at bar, plaintiffs argue that the Labor Commissioner's holdings and findings have

25  preclusive effect because the relevant issues are identical and both necessarily litigated

26  and decided.  *Plaintiffs' Post-Trial Brief* at 14.  According to plaintiffs, the Labor

27  Commissioner's holdings and findings germane to their § 523(a)(2)(A) claims are: (1)

28  plaintiffs were determined to be employees of Han; (2) Han is personally liable for the

1  damages to plaintiffs from the underpayment of wages; (3) the damage amounts have

2  been quantified by the Labor Commissioner; and (4) Han's failure to pay plaintiff the

3  balance of their wages was willful pursuant to Labor Code, §§ 201 and 203.  *Id.* at 14-15.

4          Under California law applicable here, five factors must be satisfied for the

5  application of collateral estoppel: (1) the issue to be precluded must be identical to that

6  decided in the prior proceeding; (2) the issue must have been actually litigated at that

7  time; (3) the issue must have been necessarily decided; (4) the decision in the prior

8  proceeding must be final and on the merits; and (5) the party against whom preclusion is

9  sought must be in privity with the party to the former proceeding.  *People v. Garcia,* 39

10  Cal.4th 1070, 1076-1077 (2006); *see also, Muegler v. Bening,* 413 F.3d at 982; *Ormsby v.*

11  *First American Title Co. of Nevada (In re Ormsby),* 591 F.3d 1199, 1205 n. 3 (9th Cir.

12  2010) ("The preclusive effect of a state court judgment rests upon the preclusion law of

13  the state in which the judgment was issued.") (citation omitted).  There is no dispute that

14  two elements are met here, that is, the Labor Commissioner's decisions, orders or awards

15  in favor of plaintiffs against Han are final and on the merits, and the party against whom

16  preclusion is sought, Han, was a party to the former proceeding, thus, in privity.

17  However, the court finds that plaintiffs have not shown that the issues to be precluded are

18  identical to those decided in the prior proceeding because as discussed above, the issues

19  identified by plaintiffs relate to Labor Code violations relating to wage and hour

20  regulations and not to the elements of a § 523(a)(2)(A) violation based on a false

21  representation or false pretenses.  Plaintiffs have not shown that the issues of false

22  representation or false pretenses, justifiable reliance and losses or damages

23  proximately caused by defendant's false representations under § 523(a)(2)(A) were

24  necessarily litigated before, and decided by, the Labor Commissioner.  *See Plaintiffs'*

25  *Post-Trial Brief* at 12-21. The elements of the Labor Code claims adjudicated by the

26  Labor Commissioner and confirmed by the Superior Court do not correlate to the §

27  523(a)(2)(A) claims in this adversary proceeding, and this is not discussed in plaintiffs'

28  briefing.  *Id.*  Accordingly, the court concludes that these are not circumstances to accord

18

1  preclusive effect to a prior adjudication under the doctrine of collateral estoppel as in

2  *Muegler.*

3      For the foregoing reasons, the court finds that plaintiffs have not proven by a

4  preponderance of the evidence all of the elements to establish their claims under §

5  523(a)(2)(A).  Therefore, the court hereby holds in favor of Han and concludes that his

6  debts to plaintiffs are not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

7  Plaintiffs are not entitled to recover on their claims under § 523(a)(2)(A).

8  II.    *Plaintiffs Have Not Proven That Han's Debts to Them Should Be Excepted from*

9      *Discharge for Fraud or Defalcation while Acting in A Fiduciary Capacity or for*

10      *Embezzlement (11 U.S.C. § 523(a)(4))*

11      The court concludes that the debts owed by Han to plaintiffs are not excepted from

12  discharge for fraud or defalcation while acting in a fiduciary capacity pursuant to 11

13  U.S.C. § 523(a)(4).  To prevail on a cause of action for nondischargeability based on

14  fraud or defalcation in a fiduciary relationship under § 523(a)(4), a creditor must prove (1)

15  the debtor was acting in a fiduciary capacity; and (2) while acting in that fiduciary

16  capacity, the debtor engaged in fraud or defalcation.  *Lovell v. Stanifer (In re Stanifer)*,

17  236 B.R. 709, 713 (9th Cir. BAP 1999).  "For purposes of § 523(a)(4), the fiduciary

18  relationship must be one arising from an express or technical trust."  4 March, Ahart and

19  Shapiro, *California Practice Guide: Bankruptcy,* ¶ 22:609 at 22-72, *citing inter alia, In re*

20  *Honkanen,* 446 B.R. 373, 379 (9th Cir. BAP 2011).  "For a trust relationship to be

21  established under § 523(a)(4), the applicable state law must clearly *define fiduciary*

22  *duties and identify trust property." Id.* at ¶ 22:610 at 22-72 (italics in original), *citing, In re*

23  *Honkanen,* 446 B.R. at 379 and *In re Hemmeter,* 242 F.3d 1186, 1190 (9th Cir. 2001).

24  Moreover, "[t]he trust giving rise to the fiduciary relationship must be imposed prior to any

25  wrongdoing; the debtor must have been a 'trustee' before the wrong and without

26  reference to it."  *Ragsdale v. Haller,* 780 F.2d 794, 795-796 (9th Cir. 1986)*, citing, Davis*

27  *v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934).

28

In this case, the relationship between Han and plaintiffs was an employment relationship between employer and employees, and as such, Han was not a fiduciary of plaintiffs.  There was no express or technical trust between Han and plaintiffs, and there was no identified trust property.  Plaintiffs cite no authority that an employment relationship creates a fiduciary relationship for purposes of § 523(a)(4), and their main argument is that Han's failure to pay proper wages creates a constructive trust in their favor as third-party beneficiaries, which does not qualify as an express or technical trust. *Plaintiffs' Post Trial Brief* at 21-24; *Plaintiffs' Reply Post-Trial Brief* at 4 (apparently acknowledging that Han is not a fiduciary, stating: "Defendant is not here being cast as a fiduciary, but rather being shown to have embezzled from Plaintiffs' constructive trust.").

Because there was no fiduciary relationship between Han and Plaintiffs, there cannot be any claim for fraud or defalcation in a fiduciary relationship under § 523(a)(4). Accordingly, the court finds for Han on plaintiffs' cause of action for nondischargeability based upon alleged fraud or defalcation while acting while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4), and the claim under this statute should be denied.

Plaintiffs also contend that the debts are also non-dischargeable under 11 U.S.C. § 523(a)(4) on grounds that Han "embezzled" their wages by not paying them.  The court finds that plaintiffs have not met the burden of proving by a preponderance of the evidence the three elements of an embezzlement claim under 11 U.S.C. 523(a)(4): (1) property rightfully in the possession of a nonowner; (2)  appropriation of property to a use other than the use for which the property was entrusted to them; and (3) circumstances indicating fraud. *Transamerica Commercial Finance Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 555 (9th Cir. 1991); *First Delaware Life Insurance Co. v. Wada (In re Wada),* 210 B.R. 572, 575-576 (9th Cir. BAP 1997).  Plaintiffs did not entrust property in their employer, Han, which he appropriated for a use other than for which it had been entrusted.  Han as their employer simply did not pay them their wages as properly due. While this caused violations of the wage and hour regulations in the California Labor

1  Code, it was not an embezzlement, and the court holds that plaintiffs do not have a valid

2  claim for embezzlement against Han under 11 U.S.C. § 523(a)(4).

3  IV.    _Plaintiffs Have Not Proven that Han's Debts to Them Should Be Excepted from_

4         _Discharge on Grounds that Such Debts Arose from a Willful and Malicious Injury to_

5         _Them by Han (11 U.S.C. § 523(a)(6))._

6         Plaintiffs allege that the debts owed to them by Han are excepted from discharge

7  under 11 U.S.C. § 523(a)(6) on grounds that the debt arose from willful and malicious

8  injuries to them.  *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002).  "The willful injury

9  requirement of § 523(a)(6) is met when it is shown either that defendant had a

10 substantive motive to inflict the injury or that defendant believed that injury was

11 substantially certain to occur as a result of his conduct."  *Petralia v. Jercich (In re*

12 *Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).  In other words, "§ 523(a)(6) renders debt

13 nondischargeable when there is either a *subjective* intent to harm, or a *subjective* belief

14 that harm is substantially certain."  *In re Su*, 290 F.3d at 1145 (emphasis added), *citing,*

15 *In re Jercich*.  The Ninth Circuit rejected the objective substantial certainty approach.

16 *See id.* at 1145-1146.  The "malicious injury" requirement of § 523(a)(6) is met when the

17 injury is caused by a wrongful act, done intentionally, which necessarily causes injury,

18 and which is done without just cause or excuse.  *In re Jercich*, 238 F.3d at 1208.

19        In *Jercich*, the Ninth Circuit upheld the liability of the debtor for a debt based on his

20 failure to pay an employee's wages as nondischargeable pursuant to 11 U.S.C. §

21 523(a)(6) because the debtor was found to have *subjectively* known that he owed wages

22 to the creditor and that injury to the creditor was substantially certain to occur if the

23 wages were not paid; and the debtor had the clear ability to pay the creditor his wages,

24 yet chose not to pay and instead used the money for his own personal benefit.  *Jercich*,

25 238 F.3d at 1208-1209.  Plaintiffs acknowledge that "*Carillo v. Su* requires that in order

26 to be nondischargeable under 523(a)(6), the Debtor must possess the subjective belief

27 that injury was substantially certain to result from their conduct."  *Plaintiffs' Post-Trial*

28 *Brief* at 2.  They argue that this standard is met because "[d]uring trial, Defendant's

21

testimony made it clear that when he made the decision not to pay the Plaintiffs beyond

the 'minimum' that he decided they were owed, he had the requisite subjective intent that

injury to the Plaintiffs was substantially certain to result." *Id.*

In their discussion of their claims under § 523(a)(6) in their post-trial briefing,

plaintiffs first contend that Han should be collaterally estopped from litigating willfulness:

> The Bankruptcy Court for the Northern District of California recently ruled that
> failure to pay wages, underpayment of wages, failure to pay overtime, and failure
> to pay compensation in lieu of rest breaks gives rise to a nondischargeable debt
> under section 523(a)(6).  The Labor Commissioner has already determined the
> acts of Han to be willful, and this Court should not permit Han to revisit that
> question, as discussed further above.  *In re Barajas,* U.S.B.C., N.D. Cal., No. 10-
> 3096 TEC, ECF No. 44, p.23 (9/9/11).

*Plaintiffs' Post-Trial Brief* at 24.

Plaintiffs also argue that the requisite willfulness is shown under § 523(a)(6) by an

intentional breach of contract accompanied by tortious conduct:

> Defendant's decisions not to pay wages, overtime, and compensation in lieu of
> breaks as required by law demands non-dischargeability of the resulting debt to
> the Plaintiffs.  See *Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1207 (9th Cir.
> 2001), cert. denied, 533 U.S. 930 (2001).  The Ninth Circuit stated in *Jercich* that
> "where an intentional breach of contract is accompanied by tortious conduct which
> results in willful and malicious injury, the resulting debt is excepted from discharge
> under § 523(a)(6)."  Defendant's decision violates California's fundamental public
> policy in favor of paying employee wages and constitutes a tortious breach of the
> covenant of good faith and dealing.

*Plaintiffs' Post-Trial Brief* at 24.  Plaintiffs further argue:

> Tortious conduct does not have to be independent of the breach of contract, and
> the debtor had the "clear ability" to pay wages, but willfully "chose not to."  *Jercich*
> at 1207.  The Defendant's decisions against paying wages violated public policy
> that grounded a finding of "willful and malicious injury caused by the debtor's
> tortious conduct."  *Jercich,* 238 F.3d at 1209.

*Id.*

In *Jercich,* the creditor, Petralia, sued the debtor, Jercich, in the California state

court for unpaid wages.  238 F.3d at 1204.  The state court granted judgment in favor of

the creditor, finding that the debtor had no paid the creditor commissions and vacation

pay as required under their employment agreement, that "Jercich had the clear ability to

make these payments to Petralia, but chose not to", that instead of paying the creditor

and other employees the money owed to them, "Jercich utilized the funds from his

company to pay for a wide variety of personal investments, including a horse ranch, and

that the debtor's behavior was "willful and amounted to oppression within the meaning of

California Civil Code § 3294", which allows the imposition of punitive damages in an

action for breach of an obligation not arising from contract if it is proven by clear and

convincing evidence that the defendant is guilty of oppression, fraud or malice.  *Id.*

(footnote omitted).  While the state court judgment was pending, the debtor filed a

Chapter 7 bankruptcy case.  *Id.*  After the state court trial judgment had been affirmed on

appeal, the creditor initiated an adversary proceeding to have the state court judgment

excepted from discharge under 11 U.S.C. § 523(a)(6).  The bankruptcy court held in favor

of the debtor that the debt was dischargeable on grounds that the state court had made

no finding of specific intent by the debtor to harm the creditor.  *Id.*  The Bankruptcy

Appellate Panel affirmed, but for different reasons, holding that "where a debtor's conduct

constitutes both a breach of contract and a tort, the debt resulting from that conduct does

not fit within § 523(a)(6) unless the liability for the tort is independent of the liability on the

contract."  *Id., quoting, In re Jercich,* 243 B.R. 747, 751 (9th Cir. BAP 2000).  The BAP

concluded that the debtor was not excepted from discharge under § 523(a)(6) because

there was no tort independent of the contract.  *Id.*  The Ninth Circuit reversed, holding

that "to be excepted from discharge under § 523(a)(6), a breach of contract must be

accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious

injury'" and rejecting the BAP's imposition of the requirement that the conduct be tortious

even if a contract between the parties did not exist.  238 F.3d at 1205-1206.

Under the specific facts in *Jercich,* the Ninth Circuit held that the debt for unpaid

wages was excepted from discharge under § 523(a)(6).  238 F.3d at 1206-1209.  The

Ninth Circuit determined that the debtor's conduct was tortious under California law.  *Id.*

at 1206.  "Under California law, '[c]onduct amounting to a breach of contract becomes

tortious only when it also violates an independent duty arising from principles of tort law.'"

1   *Id.* at 1206 and n. 17, *citing inter alia, Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7

2   Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 460.  The Ninth Circuit also noted that

3   although the California Supreme Court had held tort remedies are not necessarily

4   available for breach of the implied covenant of good faith and fair dealing in the

5   employment setting, a breach for the willful nonpayment of wages can constitute tortious

6   conduct even under present California law.  *Id.,* at 1206 n. 17, *citing inter alia, Foley v.*

7   *Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 1059, 1060.  With

8   respect to outside the area of insurance contracts, the Ninth Circuit observed that under

9   California law, "tort recovery for the bad faith breach of contract is permitted only when,

10  'in addition to the breach of the covenant [of good faith and fair dealing] a defendant's

11  conduct violates a fundamental public policy of the state.'"  *Id.* at 1206 and n. 18, *citing*

12  *inter alia, Rattan v. United Servs. Auto. Assoc.,* 84 Cal.App.4th 715, 101 Cal.Rptr.2d 6,

13  11.  As also noted in *Jercich,* California case law has held that "the prompt payment of

14  wages due an employee is a fundamental public policy" in California.    *Id.* at 1206 and n.

15  19, *citing, Gould v. Maryland Sound Indus., Inc.,* 31 Cal.App.4th 1137, 37 Cal.Rptr.2d

16  718, 723.  Based on the state court's findings that "Jercich had the 'clear ability' to pay

17  Petralia his wages when they were due, but willfully 'chose not to' in violation of California

18  law" and that "Jercich's acts amounted to oppression under California Civil Code § 3294.

19  which by definition must involved 'despicable conduct that subjects a person to cruel and

20  unjust hardship in conscious disregard of that person's rights," the Ninth Circuit held that

21  "Jercich's nonpayment of wages *under the particular circumstances of this case*

22  constituted tortious conduct."  238 F.3d at 1207 and nn. 21 and 22 (italics added), *citing*

23  *inter alia,* California Labor Code, § 203, California Civil Code, § 3294(c)(2) and *Applied*

24  *Equip. Corp. v. Litton Saudi Arabia Ltd.,* 28 Cal.Rptr.2d 475, 869 P.2d at 461.

25          With respect to willfulness under § 523(a)(6), the Ninth Circuit in *Jercich* held that

26  "the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor

27  had a subjective motive to inflict the injury *or* that the debtor believed that injury was

28  substantially certain to occur as a result of his conduct."  238 F.3d at 1208 (italics in

24

original).  On willfulness under § 523(a)(6), the Ninth Circuit noted that the Supreme

Court in *Kawaauhau v. Geiger,* 523 U.S. 57, 64 (1998) "clarified that it is insufficient

under § 523(a)(6) to show that the debtor *acted* willfully and that the injury was

negligently or recklessly inflicted; instead, it must be shown not only that the debtor *acted*

willfully, but also that the debtor inflicted the *injury* willfully and maliciously rather than

recklessly and negligently."  238 F.3d at 1207 and n. 25.  In applying the willfulness

standard in *Jercich,* the Ninth Circuit held that the state court's factual findings

demonstrated that the injury to Petralia was willful:

> As the state court found, Jercich knew he owed the wages to Petralia and that
> injury to Petralia was substantially certain to occur if the wages were not paid; and
> Jercich had the clear ability to pay Petralia his wages, yet chose not to pay and
> instead used the money for his own personal benefit.  He therefore inflicted willful
> injury on Petralia.

238 F.3d at 1208-1209.

On maliciousness under § 523(a)(6), the Ninth Circuit in *Jercich* stated that "[a]

'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily

causes injury, and (4) is done without just cause or excuse."   238 F.3d at 1209 and n.

36, *quoting, In re Bammer,* 131 F.3d 788, 791 (9th Cir. 1997).  Applying the maliciousness

standard in *Jercich,* the Ninth Circuit held that the state court findings were sufficient to

show that the injury inflicted by Jercich was malicious under § 523(a)(6):

> In the present case, the state court found that Jercich knew that he owed Petralia
> the wages and that injury to Petralia was substantially certain to occur if the wages
> were not paid; that Jercich had the clear ability to pay the wages; and that instead
> used the money for his own personal benefit.  Jercich has pointed to no 'just cause
> or excuse' for his behavior.  Moreover, Jercich's deliberate and willful failure to pay
> was found by the state trial court to constitute substantial oppression under
> California Civil Code § 3294, which by definition is 'despicable conduct that
> subjects a person to cruel and unjust hardship in conscious disregard of that
> person's rights.'

238 F.3d at 1209 and n. 37.

*Jercich* is relevant to this case because it involved a situation of nonpayment of

wages under California law, but it is distinguishable from the case at bar because the

1   particular circumstances of this case are different, that is, the facts are different.  *See In*

2   *re Jerich,* 238 F.3d at 1207.  In *Jerich,* the Ninth Circuit pointed to the state court's

3   factual findings that the debtor had the clear ability to pay the wages when they were

4   due, but he chose not to.  In the case at bar, plaintiffs have not shown by a

5   preponderance of the evidence that Han had the "clear ability" to pay their correct wages

6   when they were due or that he chose not to.  There is little, if any, evidence that Han had

7   the "clear ability" to pay plaintiffs' correct wages other than Han testifying that he paid

8   himself a salary of approximately $3,000 per month, or $36,000 per year, which is not

9   much more than subsistence.  There is no other evidence showing that Han chose to pay

10  other than expenses of the business.  Moreover, the evidence does not indicate that Han

11  "chose" not to pay the correct wages, but that Han did not pay the correct wages to

12  plaintiffs because of his lack of understanding of his legal duties as an employer.   *See In*

13  *re Betts,* 174 B.R. at 648-649 (summary judgment denied where factual findings were not

14  made in prior administrative proceedings regarding debtor's subjective intent and

15  evidence of ignorance of the law may support inference eof lack of malice or willfulness

16  under 11 U.S.C. § 523(a)(6). Thus, the court finds that the preponderance of the

17  evidence does not show that Han willfully failed to pay wages in breach of the implied

18  covenant of good faith and fair dealing to constitute tortious conduct under California law.

19      The court concludes that this case is different from *Jerich* because willfulness has

20  not been proven as this court has found, Han did not *subjectively* know that he was not

21  paying "minimum wage" by failing to pay plaintiffs for all of the regular time, overtime and

22  double time work as well as for meal and rest periods, and he did not *subjectively* believe

23  that plaintiffs' injuries from nonpayment of correct wages was substantially certain to

24  occur.  Therefore, the court finds that Han was not "willful" in injuring plaintiffs through his

25  failure to comply with state wage and hour laws for purposes of § 523(a)(6).

26      The court further concludes that this case is different from *Jerich* because malice

27  is not proven since Han did not act intentionally in failing to pay plaintiffs the correct

28  wages.  Unlike *Jerich,* the evidence does not establish that Han had the clear ability to

1   pay the correct wages or that he chose not to.  As discussed above, the evidence is

2   insufficient that Han had the clear financial ability to pay the wages in question and that

3   he chose not to, that is, intentionally so.  Here, the evidence shows that Han had a

4   mistaken understanding of what he was required under the law to pay in wages to

5   plaintiffs, and that is why he failed to pay them the correct wages.

6        This case is also distinguishable from *Barajas,* the case that plaintiffs cited to, but

7   failed to submit a copy of the unreported opinion to the court or the opposing party as

8   required by Local Bankruptcy Rule 9013-2(c)(3)(D).  The court has reviewed the opinion

9   in *Barajas,* available on the PACER (Public Access to Court Electronic Records) system

10  and determines that the circumstances of that case are different than here because the

11  debtor in that case was aware of the requirements of payment of overtime pay and

12  provision of meal and rest breaks as he signed the collective bargaining agreement

13  (CBA) with his company's workers expressly providing for such conditions of

14  employment, and though the company had the ability to pay wages based on the CBA,

15  he caused to be paid his own personal expenses and other expenses rather than the

16  wages based on the CBA.   *District Council of Ironworkers v. Barajas (In re Barajas),*

17  Case No. 10-30657 TEC Chapter 7; Adv. Proc. No. 10-3096 TC (Bankr. N.D. Cal.,

18  decision after trial, entered on September 12, 2011).  With respect to the evidentiary

19  showing of willfulness, *Barajas* is similar to *Jercich.*  However, in the case at bar, plaintiffs

20  have not shown any evidence, let alone by a preponderance of the evidence, that

21  defendant Han was aware of the requirements of the Labor Code to pay for overtime and

22  double time work and to provide meal and rest breaks and that he "chose" not to pay the

23  correct wages with the "clear" ability to do so.

24        As for plaintiffs' § 523(a)(2)(A) claims, the court does not accord collateral estoppel

25  effect for the Labor Commissioner's decisions for their § 523(a)(6) claims.  While there is

26  no dispute that two elements of collateral estoppel are met here, that is, the Labor

27  Commissioner's decisions, orders or awards in favor of plaintiffs against Han are final and

28  on the merits, and the party against whom preclusion is sought, Han, was a party to the

former proceeding, thus, in privity, the court finds that plaintiffs have not shown that the

issues to be precluded are identical to those decided in the prior proceeding because as

discussed above, the issues identified by plaintiffs relate to Labor Code violations relating

to wage and hour regulations and not to the elements of a § 523(a)(6) violation based on

a false representation or false pretenses.  Plaintiffs have not shown that the issues of

willfulness and malice under § 523(a)(6) were necessarily litigated before, and decided

by, the Labor Commissioner.  *See Plaintiffs' Post-Trial Brief* at 12-21.  The court has

reviewed the decisions of the Labor Commissioner and notes that although the Labor

Commissioner imposed penalties against Han for willful late payment of wages after

discharge from employment under Labor Code, § 203, the Commissioner in the decisions

made no factual findings of willfulness or malice.  *Castro Decision,* Exhibit 4; *Juarez*

*Decision,* Exhibit 6; *Fernandez Decision,* Exhibit 8.  Plaintiffs argue that the

Commissioner's holding of willful late payment of wages by Han in paragraph 27 of the

Labor Commissioner's decision on plaintiff Castro's claim is entitled to preclusive effect,

but this holding is located in the section of the decision called "Legal Analysis" and not in

the section called "Findings of Fact" and is not supported by any factual finding or other

identified evidentiary support.  Exhibit 4 at 11, ¶ 27.  Moreover, the Labor Commissioner

applied legal standards of willfulness and malice under Labor Code, § 203, that are not

consistent with the applicable legal standards of willfulness and malice under 11 U.S.C. §

523(a)(6) which the Labor Commissioner held that malice need not be shown and that

willfulness only requires a showing of negligence that Han "should have known."  *In re*

*Jericich,* 238 F.3d at 1207 and n. 25, *citing Kawaauhau v. Geiger,* 523 U.S. at 64

("insufficient under § 523(a)(6) to show that the debtor *acted* willfully and that the injury

was negligently or recklessly inflicted; instead, it must be shown not only that the debtor

*acted* willfully, but also that the debtor inflicted the *injury* willfully and maliciously rather

than recklessly and negligently").  *Castro Decision,* Exhibit 4 at 11, ¶ 25 ("The term 'willful'

as used in Labor Code Section 203 does not require malice.  It requires only that the

employer knew or should have known of the duty to act and volitionally failed to perform

1   the act."); *Juarez Decision,* Exhibit 6 at 11, ¶ 25 (same); *Fernandez Decision,* Exhibit 8 at

2   at 11, ¶ 25 (same).

3          Thus, plaintiffs have not shown that the Labor Commissioner's holdings are

4   entitled to collateral estoppel effect on willfulness and malice since they have not proven

5   that the  issues in the prior proceedings are identical and were actually and necessarily

6   decided.

7          For the foregoing reasons, the court holds that plaintiffs have not shown by a

8   preponderance of the evidence that Han's debts to plaintiffs arose from willful and

9   malicious injuries to them by him, and the court should deny their claims to except these

10  debts from discharge under 11 U.S.C. § 523(a)(6).

11         In this case, plaintiffs are very sympathetic litigants who were shortchanged what

12  they were due for their labor during their employment for Han.  Han engaged in illegal

13  employment practices which constituted serious violations of the California Labor Code

14  by not paying them their legally due wages in not recognizing their overtime or double

15  time work, in incorrectly treating travel time as non-compensable time and in not allowing

16  them proper meal and rest breaks.  Nevertheless, in proving their claims under the

17  Bankruptcy Code that the debts that Han owes them for his Labor Code violations, they

18  must prove all of the elements, such as an intent to defraud or deceive and willful and

19  malicious injury.  The discharge of debt under the Bankruptcy Code effectuates the "fresh

20  start" goal of bankruptcy proceedings.  4 March, Ahart and Shapiro, *California Practice*

21  *Guide: Bankruptcy,* ¶ 22:5 at 22-1, *citing, Grogan v. Garner,* 498 U.S. at 286.  As

22  recognized by the Supreme Court in *Grogan v. Garner,* "a central purpose of the

23  [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can

24  reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life

25  with a clear field for future effect, unhampered by the pressure and discouragement of

26  preexisting debt."  *Id.* (citation omitted).

27         The Supreme Court in *Grogan v. Garner* also noted that this "fresh start" policy

28  "limits the opportunity for a completely unencumbered new beginning to the 'honest but

1    unfortunate debtor.'"  498 U.S. at 286.  In discussing the exceptions to dischargeability of

2    debt under 11 U.S.C. § 523(a), the Supreme Court also commented that such exceptions

3    "reflect a congressional decision to exclude from the general policy of discharge certain

4    categories of debts—such as child support, alimony, and certain unpaid educational

5    loans and taxes, as well as liabilities for fraud."  *Id.*  "Congress evidently concluded that

6    the creditors' interest in recovering full payment of debts in these categories outweighed

7    the debtors' interest in a complete fresh start. . . Requiring the creditor to establish by a

8    preponderance of the evidence that his claim is not dischargeable reflects a fair balance

9    between these conflicting interests."  *Id.*  In reaching its decision, the court has carefully

10   heard and considered the testimony of the witnesses, the arguments of the parties and

11   the documents and other evidence admitted at trial as well as the other papers and

12   pleadings in this case.  As discussed above, the court has concluded that plaintiffs have

13   failed to meet their burden of proof as required under the Bankruptcy Code and that Han

14   is entitled to keep his discharge of the debts owed to plaintiffs.  This decision was not

15   made lightly, and nothing here should be interpreted to condone Han's violations of the

16   Labor Code.  Han is certainly now on notice that he cannot claim ignorance of the law if

17   he engages in the same employment practices in operating his business in treatment of

18   his workers under the Labor Code.  However, in applying the relevant provisions of the

19   Bankruptcy Code to the evidence admitted at trial, the court reaches the conclusions as it

20   has discussed in this memorandum decision.

21        This memorandum decision constitutes the court's findings of fact and conclusions

22   of law.

23        ///

24        ///

25        ///

26

27

28

30

1    The court will enter a separate judgment in accordance with this memorandum

2  decision concurrently herewith.

3    IT IS SO ORDERED.

4                                                              ###

Date: February 11, 2013

_____

Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION ON ADVERSARY COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBT** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **February 11, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Howard M Ehrenberg (TR)    ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com;C123@ecfcbis.com
- Jordan D Mazur    jmazur@unioncounsel.net
- Chris R Morton    cmorton@attglobal.net
- Christian L Raisner    bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Chang Sup Han
26947 N. Boulder Crest Dr.
Valencia, CA  91381

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below: